NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed / Docketed
October 22, 2007

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BABER, CHERIE RENEE, | ) | Case No. 06-11629-R |
| | ) | Chapter 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| SIDNEY K. SWINSON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-1066-R |
| | ) | |
| CHERIE RENEE BABER | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is the Complaint of Plaintiff, Sidney K. Swinson, Chapter 7 Trustee (the "Trustee"), seeking the revocation of the discharge entered in favor of Debtor/Defendant Cherie Renee Baber (the "Debtor") on the grounds that the Debtor knowingly and fraudulently failed to surrender property of the estate, namely her 2006 federal and state income tax refunds, to the Trustee, and further failed to obey a lawful order of the Court requiring her to turn over the refunds to the Trustee. In the Complaint, the Trustee also seeks a money judgment against the Debtor for conversion of the refunds, as well as attorney's fees and costs.

A trial on the merits of the Complaint was held at which the Trustee appeared personally and through his counsel. Although the Debtor was given adequate notice of the trial, she failed to appear. The Trustee testified as to the factual basis for his Complaint, and the Court admitted Trustee's Exhibits 1 through 12. Upon consideration of the pleadings, the evidence presented at trial, the arguments of counsel, and the applicable law, the Court finds and concludes as follows:

**I.      Jurisdiction**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (J).

**II.     Findings of fact**

The Debtor filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code on November 10, 2006. The Debtor's schedules indicated secured debt in the amount of $262,456.16 and unsecured nonpriority debt of $299,753.23. Trustee Exhibit 1. The Trustee was appointed as Chapter 7 trustee to liquidate and administer the non-exempt property of the estate for the benefit of creditors. On November 29, 2006, the Trustee advised the Debtor by letter that any income tax refunds she might receive in 2007 which were attributable to income tax withholding that occurred pre-petition constituted property of the estate. Trustee Exhibit 2. In the letter, the Trustee further notified the Debtor that she had an obligation to submit her 2006 income tax returns to him as soon as they were prepared, and advised that if the Trustee determined that the refunds should be administered for the benefit of creditors, the Debtor would be required to endorse and mail the refund

checks to him.  At that time, the Trustee warned the Debtor:  "[I]f you do not provide me with copies of your 2006 income tax returns and if you do not send me your 2006 income tax refund check(s) as soon as you receive it [sic], I will file a Complaint with the Bankruptcy Court to object to your discharge or to revoke your discharge if the discharge has already been entered." Id.

On December 14, 2006, at the meeting of creditors conducted in the Debtor's bankruptcy case, the Trustee reminded the Debtor of her duty to provide him with copies of her 2006 income tax returns and her duty to surrender refund checks to him.

On February 9, 2007, the Trustee advised the Debtor by letter that she should file her 2006 income tax returns as soon as possible.  He further stated:

> Upon receipt of your income tax returns, I will promptly let you know by letter whether I intend to administer your income tax refunds (excluding any exempt earned income credit).  If I do choose to administer the non-exempt portion of your income tax refunds, I will expect you to, immediately upon your receipt of them, endorse your income tax refunds checks and forward them to me.  I will immediately upon receipt, refund to you any exempt portion and any portion that is not an asset of your bankruptcy estate, representing the refund attributable to taxes withheld after your bankruptcy filing until the end of the calendar year.
>
> Your failure to comply with this request may result in the denial of your bankruptcy discharge.

Trustee Exhibit 3.

On February 15, 2007, the Debtor sent the Trustee copies of 2006 state and federal tax returns that were signed by the Debtor on February 14, 2007.  Her returns indicated that she was entitled to a federal refund in the amount of $10,434.00 and a state refund in the

amount of $3,078.00, for a total refund of $13,512.00. Trustee Exhibit 4.[1] On both returns, the Debtor requested that the taxing authority refund her overpayment of taxes by directly depositing the refund into a checking account. In the letter to the Trustee that accompanied the copies of tax returns, the Debtor asked the Trustee to decline to administer the refunds for the benefit of her creditors, and to allow her to retain the money because (1) she had been laid off from her position at TV Guide on December 29, 2006, and had been unemployed for approximately seven weeks; (2) she was receiving only $317 per week in unemployment benefits; and (3) her unemployment created a financial hardship for herself and her three children. Trustee Exhibit 4.

Lacking discretion to permit the Debtor to retain property of the estate consisting of over $13,000 in cash,[2] on February 19, 2007, the Trustee advised the Debtor by letter that "[d]ue to the size of the income tax refunds, I am unable to honor your request that I not administer the money. Although, as trustee, I have some discretion on which assets to administer, I believe the size of the income tax refunds, together with the value of your store

---

[1] The Trustee testified that although the Debtor's state income tax return indicated that the Debtor was entitled to a refund in the amount of $3,078.00, he later learned that she actually received only $2,800.00 from the state.

[2] A trustee may abandon property of the estate only if the property is burdensome to the estate or is of inconsequential value and benefit to the estate. See 11 U.S.C. § 554(a). For instance, the Trustee may decide to forego the administration of a non-exempt asset when the asset is of *de minimus* value or when the projected cost of liquidating the asset and distributing proceeds to creditors equals or exceeds the liquidation value of the asset. The Bankruptcy Code does not require, or permit, a trustee to consider the post-petition financial needs of the debtor when deciding whether estate property is valuable and beneficial to the estate.

inventory, require that I administer the inventory and the portion of the refunds that are property of the bankruptcy estate and not exempt." Trustee Exhibit 5. The Trustee demanded that the Debtor endorse and submit the refund checks to him, and he promised that he would return to her a check consisting of monies withheld post-petition, which he determined to be $1,891.68,[3] and the Debtor's earned income credit in the amount of $2,747.00, which, although the Debtor had not claimed an exemption, would have been exempt had she so claimed it. Id.[4]

On February 20, 2007, a Discharge was entered discharging the Debtor from all dischargeable debts. Discharge (Main Case Doc. 27).

The Debtor did not send the refunds to the Trustee or otherwise respond to the Trustee's letter of February 19, 2007. On April 12, 2007, the Trustee filed a Motion for Order Directing the Debtor to Turnover Property ("Turnover Motion") (Main Case Doc. 31), seeking an order directing the Debtor to surrender the refunds to the Trustee. The Debtor, acting *pro se*, filed a response in which she admitted that at the time she filed her bankruptcy petition, she "was told that I might have to give up the merchandise in my store and my income tax return [sic] or a portion of it. I didn't see any problem with this because I had full time employment making 70,000/yr." Response to the Motion for Order Directing Debtor

---

[3]Because the Debtor received only $2,800.00 from the state rather than $3,078.00, the Trustee has adjusted the figure representing the *pro rata* post-petition withholding that was not property of the estate from $1,891.68 to $1,852.00.

[4]The Debtor has not amended her schedules to claim an exemption in the portion of the refunds attributable to earned income credit.

to Turnover Property (Main Case Doc. 32). She further stated, however, that she had since become unemployed, received only $317 per week in unemployment, had borrowed money from her friends and family, and was disqualified for food stamps, and therefore she needed to retain the refunds to "get caught up on my rent and utilities just to keep a roof on my children's head [sic] and to pay doctor's bills." Id.

On May 15, 2007, at a hearing on the Turnover Motion at which the Debtor was represented by counsel, the Debtor admitted that she had received and spent the refunds. The parties then agreed to the entry of an Order Directing Debtor to Turnover Property ("Turnover Order") (Main Case Doc. 41), in which, with the consent of both parties, the Court ordered the Debtor to turnover $11,381.24 to the Trustee.[5] The Debtor has failed to comply with the Turnover Order.

On May 23, 2007, the Trustee filed his Complaint seeking revocation of the Debtor's discharge on the grounds that the Debtor knowingly and fraudulently failed to surrender to the Trustee the refunds that were property of the estate and refused to obey the Turnover Order. Trustee Exhibit 10. The Trustee also charged the Debtor with conversion of property of the estate and seeks a money judgment against the Debtor. On June 22, 2007, the Debtor filed an answer to the Complaint (entitled "Response to the motion for Plaintiff, Sidney K. Swinson's, claim for relief against Defendant, Cherie Renee Baber") (the "Answer"),

---

[5]This figure represents the total of the refunds received by the Debtor ($13,234.00) less the post-petition withholding ($1,852.76) that was not property of the estate.

6

claiming "unforeseen hardship," advice of counsel, and an offer to make payments to the Trustee which (she claims) the Trustee rejected.  Trustee Exhibit 11.  The Debtor also contended that she could not get a loan to repay the Trustee because of her bankruptcy.  Id.

On July 23, 2007, after a Scheduling Conference held in this proceeding, the Trustee offered to accept $11,500.00 to dismiss this action with prejudice if the Debtor paid the entire amount before the trial date (October 16, 2007) and supplied the Trustee with additional information about her 2006 sales tax reports and returns.  Trustee Exhibit 12.  The Debtor did not respond to the settlement offer and has not paid any amount to the Trustee.

After losing her job, the Debtor, a single person with three children under the age of twelve, entered into and filed three Reaffirmation Agreements in which she reaffirmed over $53,000.00 in pre-petition debt that was secured by a 2006 Harley-Davidson Vrsca V-Rod, a 2003 Toyota Tundra pickup truck (which was not listed as an asset on the Debtor's schedules),[6] and a 2005 Chevrolet Avalanche.  In so doing, the Debtor re-obligated herself to make payments totaling $1,401.37 per month.  Trustee Exhibits 7, 8 and 9.  If it is true that the Debtor became unemployed on December 29, 2007, and remained unemployed for six months, as she contends, it further appears that in order to reaffirm these debts and retain these vehicles, the Debtor misrepresented her income on the Reaffirmation Agreement forms and falsely claimed that she had the means to make the monthly payments on the vehicles. For example, on February 5, 2007 (over a month after being laid off), the Debtor signed a

---

[6] It appears that the Debtor either failed to disclose an estate asset on her schedules or she chose to reaffirm a debt on a vehicle she did not own.

7

Reaffirmation Agreement with Wells Fargo Auto Finance in which she reaffirmed debt of $27,435.51, secured by the 2005 Chevrolet Avalanche, payable in 48 payments of $632.34 per month.  Trustee Exhibit 9.  The Debtor represented that "I believe that this reaffirmation agreement will not impose an undue hardship on my dependents or me.  I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $3994.22, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $3359.83, leaving $634.39 to make the required payments on this reaffirmed debt."  Id.  On February 14, 2007, the Debtor's attorney certified that the agreement "does not impose an undue hardship on the debtor or any dependent of the debtor."  Id.[7]

**III.     Conclusions of law**

A.     Revocation of discharge pursuant to Section 727(a)(2).

Section 727(d)(2) of the Bankruptcy Code provides–

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> *****
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the

---

[7]This Reaffirmation Agreement was filed with the Court on February 20, 2007.  The Reaffirmation Agreement relating to the Harley Davidson motorcycle was filed on January 3, 2007, and the Reaffirmation Agreement relating to the Toyota Tundra was filed on January 27, 2007.

>acquisition of or entitlement of such property, or to deliver or surrender such property to the trustee. . .

11 U.S.C. § 727(d)(2).

The Trustee has the burden of establishing by a preponderance of the evidence that the Debtor acquired or became entitled to acquire property of the estate and the Debtor (a) knowingly and fraudulently failed to report the acquisition of or entitlement of such property or (b) knowingly and fraudulently failed to deliver or surrender such property to the trustee. See McNally v. Echart (In re Echart), Adv. No. 06-6057, 2007 WL 2591197, at *2 (Bankr. E.D. Tex. Sept. 5, 2007). Proving that the Debtor knowingly and fraudulently failed to report the receipt of the refunds, or knowingly and fraudulently failed to surrender the refunds, may be shown by inferences drawn from the surrounding circumstances and course of conduct of the Debtor. See id., *citing* In re Yonikus, 974 F.2d 901, 904 (7th Cir. 1992); First Texas Svgs. Ass'n v. Reed (In re Reed), 700 F.2d 986, 991 (5th Cir. 1983).

It is undisputed that at some point after the Debtor filed her tax returns on or about February 14, 2007, the Debtor acquired property of the estate (*i.e.*, refunds of excess state and federal taxes that were withheld from the Debtor's income prepetition). Because the Trustee had advised the Debtor at the meeting of creditors and through a series of letters that he considered the majority of any tax refund to which she was entitled as a result of filing a 2006 income tax return to be property of the estate, the Debtor knew that at least a portion of the state and federal tax refunds she received were property of the estate, that she had a duty to surrender the refunds to the Trustee, and that the portion that represented post-

petition withholding and earned income credit would be returned to her. The Debtor was given written notice that failing to supply the Trustee with her 2006 tax returns or failing to surrender any refund she received would be grounds for denial or revocation of her discharge.[8] By requesting in her letter dated February 15, 2007, that the Trustee decline to administer the anticipated refunds, the Debtor acknowledged that the refunds were property of the estate. Notwithstanding this knowledge, and despite the Trustee's demand for turnover of the refunds in response to the Debtor's request, the Debtor failed to report her receipt of the refunds to the Trustee and proceeded to use the estate's property for her own purposes.

Because the Debtor had ample notice of her duty to report the receipt of and to immediately surrender the refunds to the Trustee, as well as notice of the consequences of failing to turn over the funds, the Court finds her misappropriation of acknowledged property of the estate "knowing and fraudulent." See, e.g., Echart, 2007 WL 2591197, at *2; Hill v. Muniz (In re Muniz), 320 B.R. 697, 701 (Bankr. D. Colo. 2005) (debtor's acquisition of and failure to report and surrender a tax refund to the trustee, which was done with full knowledge of her obligation to do so and without regard to the consequences, was willful and fraudulent). See also Sicherman v. Rivera (In re Rivera), 338 B.R. 318, 325-27 (Bankr. N.D.

---

[8]Section 521 of the Bankruptcy Code imposes upon debtors a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title" and to "surrender to the trustee all property of the estate and . . . documents, records, and papers, relating to property of the estate . . . " 11 U.S.C. § 521(a)(3) and (4). "[A] debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the benefit of a discharge of debts[] must fulfill certain duties to insure that estate assets are administered in accordance with applicable law." Beach v. Morris (In re Beach), 281 B.R. 917, 921 (B.A.P. 10th Cir. 1997) (citation omitted).

Ohio 2006) (debtor who dissipated personal injury settlement proceeds after being advised by the trustee and his bankruptcy lawyer that the anticipated proceeds would be property of the estate "knowingly and fraudulently" failed to report and surrender estate assets), *aff'd* Case No. 06-8013, 2007 WL 130415 (B.A.P. 6th Cir. Jan. 11, 2007).

In her Answer (Trustee Exhibit 11), the Debtor argues that she should be excused from the consequences of failing to surrender over $11,000.00 of estate property on the basis of the "unforeseen hardship" resulting from the loss of her job after she filed bankruptcy and the ensuing six months of unemployment. The Court notes that the fact that the Debtor was single, unemployed and had three young children to provide for did not prevent the Debtor from reaffirming $53,000 in debt in order to retain an excessive number of late-model vehicles, namely a Harley Davidson motorcycle and two pickup trucks. Even if post-petition financial hardship constituted a defense to refusing to surrender property of the estate to the Trustee (which it does not),[9] the Court concludes that the Debtor is judicially estopped from pleading financial hardship by virtue of the Debtor's contemporaneous declarations, contained in the Reaffirmation Agreements, that making payments of over $1,400 per month on the reaffirmed debts would not impose an undue hardship on her or her dependents.

In her Answer, the Debtor also claims that she was never told by her attorney that her discharge could be revoked if she did not surrender the refunds. However, the Trustee

---

[9]See Muniz, 320 B.R. at 701-02 (debtor's inability to repay the value of the tax refunds she converted to her own use is not a defense to an action seeking the revocation of discharge for knowingly refusing to surrender property of the estate to the trustee).

unambiguously warned the Debtor prior to her receipt of the refunds that he would seek to deny or revoke her discharge if she did not comply with his demand that she surrender the refunds to him upon receipt. Regardless of what her own attorney did or did not tell her, the Debtor had actual knowledge of the consequences of failing to surrender the refunds. See, e.g., Rivera, 338 B.R. at 326-27 (it was not reasonable or credible that debtor actually relied in good faith on advice of his personal injury counsel not to turn over settlement proceeds to the trustee because the debtor had been repeatedly advised by the trustee and debtor's own bankruptcy counsel that proceeds were property of the estate).

Finally, in her Answer, the Debtor contends that the Trustee rebuffed her offers to make payments to reimburse the estate for her misappropriation of estate property. Although the record lacks any evidence that the Debtor made such an offer, even if she did, subsequent remorse and a desire to make restitution does not erase the original act of knowingly and wilfully misappropriating property of the estate. See, e.g., Echart, 2007 WL 2591197, at *3-4 ("Just as a thief would not be exonerated by his ability or willingness to make restitution of stolen bank notes upon discovery, these Debtors cannot escape the consequences of their intentional decision to appropriate and convert estate assets to which they knew they were not entitled."); Muniz, 320 B.R. at 701-02; Olsen v. Reese (In re Reese), 203 B.R. 425, 431-32 (Bankr. N.D. Ill. 1997) ("The eventual turnover of the [tax refund] does not cure the original fraud.").

The Trustee has established the elements of Section 727(d)(2), and accordingly, the Debtor's discharge should be revoked.[10]

B. <u>Conversion</u>.

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." <u>Welty v. Martinaire of Oklahoma, Inc.</u>, 1994 OK 10, 867 P.2d 1273, 1275. The Trustee has established that the Debtor exerted dominion and control over the refunds, and knowing that the refunds were property of the estate, spent them for her own purposes. The Debtor's wrongful misappropriation of property of the estate constitutes conversion.

Moreover, "[t]he fact that Debtor's discharge is revoked does not nullify the legal obligations which she voluntarily invoked upon the filing of her bankruptcy petition. She is still obligated to pay over to the Trustee the value of the non-exempt property which she possessed or was entitled to receive as of her petition date." <u>Muniz</u>, 320 B.R. at 702. <u>See also</u> <u>LaBarge v. Ireland (In re Ireland)</u>, 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005).

Accordingly, whether labeled a turnover order or judgment for conversion, the Trustee is entitled to a money judgment against the Debtor in the amount of $11,381.24.[11]

---

[10] Because the discharge is revoked under Section 727(d)(2), the Court need not determine whether the Trustee has also established grounds for revocation under Section 727(d)(3).

[11] This figure is the amount the Debtor was ordered to turnover in the Turnover Order and is calculated as the amount of refunds received by the Debtor less the amount attributable to post-petition withholding, which the Trustee acknowledges is not property of the estate. The Court will not deduct the earned income credit portion of the refunds from the judgment

## IV.     Conclusion

For the reasons stated above, a judgment shall be entered revoking the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(2), and a money judgment shall be entered against the Debtor and in favor of the Trustee in the amount of $11,381.24.

**SO ORDERED** this 22nd day of October, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

amount because the Debtor has never claimed those funds as exempt.  The Turnover Order is merged into the judgment.
    As the Trustee withdrew his request for attorney's fees and costs at trial, the judgment will not be supplemented to include fees and costs.